UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
DEC 29 2004
NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

THE FERTILIZER INSTITUTE, )
)
Plaintiff, )
)
v. ) Civil Case No. 01-1999 (RJL)
)
)
U.S. DEPARTMENT OF HEALTH )
AND HUMAN SERVICES, *et al.*, )
)
Defendants. )

MEMORANDUM OPINION AND ORDER
(December 29, 2004) [# 12, # 19]

The Fertilizer Institute ("TFI"), a non-profit trade association that represents all phases of the fertilizer industry, brings this action challenging the decision of the National Toxicology Program ("NTP") to classify inorganic acid mists containing sulfuric acid ("sulfuric acid mist") as a known carcinogen in the 9th Report on Carcinogens ("9th RoC").[1] Before the Court are the plaintiff's Motion for Summary Judgment and the defendants' Cross-Motion for Summary Judgment. After due consideration of the parties' motions and the record before the Court, the Court DENIES the plaintiff's Motion for Summary Judgment and GRANTS the defendants' Cross-Motion for Summary Judgment.

---

[1]  TFI has named the Department of Health and Human Services ("HHS"), the Secretary of HHS, and the Director of the National Institute of Environmental Health Services and the NTP as defendants in this matter.

## BACKGROUND

Section 301 of the Public Health Safety Act mandates that the Secretary of HHS ("Secretary") publish biennially a report that contains "a list of all substances (i) which either are known to be carcinogens or may reasonably be anticipated to be carcinogens and (ii) to which a significant number of persons residing in the United States are exposed." 42 U.S.C. § 241(b)(4)(A). This report, known as the Report on Carcinogens ("RoC"), is "an informational scientific and public health document that identifies and discusses agents, substances, mixtures, or exposure circumstances that may pose a carcinogenic hazard to human health." Administrative Record ("R.") at 646. The Secretary has delegated the responsibility for preparing the RoC to the NTP. Pl. Stmt. of Facts ¶ 2.

On May 15, 2000, the Secretary submitted to Congress the 9th RoC, which included sulfuric acid mist on the list of known carcinogens. *Id.* ¶ 32. Before deciding to list this substance on the RoC, the NTP conducted a multi-phased, scientific peer review. Def. Opening Br. at 6. Indeed, there are two federal review groups and one non-governmental peer group that evaluate the nominations for listing on and de-listing from the RoC. Pl. Stmt. of Facts ¶ 7. During this process, the NTP invites public comments and participation. *Id.* ¶¶ 6, 8, 31. Once the three groups have evaluated the nominations, the recommendations of each group and the public comments are presented to an NTP interagency group that conducts a fourth independent review of the data and information

regarding listing decisions. *Id.* ¶ 31. The NTP Director then reviews the recommendations from the four groups and the public comments in order to make his or her own recommendations, which are submitted to the Office of the Secretary as the final draft of the RoC. *Id.* Once the Secretary has reviewed and approved the RoC, the RoC is submitted to Congress and notice is published in the *Federal Register* and other publications. Def. Stmt. of Facts ¶ 18.

Sulfuric acid is the largest volume chemical produced in the United States. Def. Stmt. of Facts ¶ 20. The substance, which is oily at room temperature, is one of the most used industrial chemicals. Def. Stmt. of Facts ¶¶ 20, 23. For example, it is used in the manufacturing of a wide range of items, including: "fertilizers, rayon and other fibers, pigments and colors, explosives, plastics, coal-tar products such as dyes and drugs, storage batteries, synthetic detergents, natural and synthetic rubber, pulp and paper, cellophane and catalysts." R. at 11. The use of liquid sulfuric acid during the manufacturing process, however, can generate a sulfuric acid mist if certain conditions are present. Pl. Stmt. of Facts ¶ 37. The health effects of sulfuric acid mist exposure have been studied extensively. Def. Stmt. of Facts ¶ 26. In 1992, the International Agency for Research on Cancer ("IARC") found that there was sufficient evidence in human epidemiology studies to conclude that exposure to sulfuric acid mist is carcinogenic to humans. Def. Stmt. of Facts ¶ 27. And, during its review, NTP considered at least seven epidemiology studies. Pl. Stmt. of Facts ¶ 32. Based upon its

review of available studies and public comments, NTP concluded there was sufficient evidence to show "a positive correlation between sulfuric acid mist exposure and cancer," Def. Stmt. of Facts ¶ 115, and it classified sulfuric acid mist as a known carcinogen.

## DISCUSSION

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment may support its motion by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56). In opposing summary judgment, the "nonmoving party [must] go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED. R. CIV. P. 56). In determining whether a genuine issue of material fact is in dispute, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The plaintiff alleges that NTP failed to comply with the APA's notice and comment requirements by inadequately addressing comments by organizations opposed to

the listing of sulfuric acid mist as a known carcinogen. The plaintiff also contends that NTP failed to satisfy the listing requirements because it relied on flawed reports and did not adequately determine that a "significant number of persons" were *actually* exposed to sulfuric acid mist. For the following reasons, the Court finds that NTP's decision to list a substance on the RoC was not a substantive rule subject to notice-and-comment requirements under the APA, and the NTP satisfied the listing requirements[2] outlined in Section 301 of the Public Health Safety Act. Accordingly, the Court denies the plaintiff's Motion for Summary Judgment and grants the defendants' Cross-Motion for Summary Judgment.

### A. The RoC Listing Decision is Not a Substantive Rule Subject to Formal Notice-and-Comment Procedures

The APA requires that an agency participate in formal notice-and-comment procedures for any legislative or substantive rulemaking. 5 U.S.C. § 553. An agency, however, is not required to comply with notice-and-comment procedures if they are only promulgating "interpretive" rules. *Shalala v. Guernsey Mem. Hosp.*, 514 U.S. 87, 99 (1995). While drawing the distinction between substantive and interpretive rules can be a difficult task, *Paralyzed Veterans v. D.C. Arena L.P.*, 117 F.3d 579, 587 (D.C. Cir. 1997); *see also Am. Mining Congress v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1108 (D.C. Cir. 1993) ("The distinction between those agency pronouncements subject to APA

---

[2] There are two prerequisites to listing a substance on the RoC: (1) the substance must be a known carcinogen or must be reasonably anticipated to be a carcinogen, and (2) a significant number of persons in the U.S. are exposed to the substance. 42 U.S.C. § 241(b)(4).

notice-and-comment requirements and those that are exempt has been aptly described as 'enshrouded in considerable smog.'"), our circuit has established a four-part test for determining whether an agency action is substantive or interpretive. In *American Mining Congress*, the D.C. Circuit held that if any of four criteria is met, the agency action is substantive and therefore subject to notice-and-comment procedures. *Am. Mining Congress*, 995 F.2d at 1112. The four criteria it set forth are:

> (1) whether in the absence of the rule there would not be an adequate legislative basis for enforcement action or other agency action to confer benefits or ensure the performance of duties, (2) whether the agency has published the rule in the Code of Federal Regulations, (3) whether the agency has explicitly invoked its general legislative authority, or (4) whether the rule effectively amends a prior legislative rule.

*Id.* ("*AMC* Test"). For the following reasons, the NTP's decision to list sulfuric acid mist on the RoC does not meet any of the criteria set forth in the *AMC* Test.

As to the first criteria, Section 301 of the Public Health Services Act mandates that the Secretary publish a biennial report on carcinogenicity. 42 U.S.C. §241(b)(4). The report is a scientific and public health document that provides information to the public about substances that may pose a carcinogenic hazard to humans. R. at 646. In *Tozzi v. U.S. Department of Health & Human Services*, the D.C. Circuit found that listing a substance on the RoC has sufficient "binding effect" to establish only the reviewability of the agency action. 271 F.3d 301, 310 (D.C. Cir. 2001). Although the listing may trigger obligations under other agency regulations, the mere listing itself does not create any rights or duties and therefore is not a substantive rule under the first criteria of the *AMC*

6

Test.[3] Since a listing neither creates any rights and duties nor provides for enforcement action the first criteria is not met.

Moreover, the second criteria in the *AMC* Test is also not met because a summary of the RoC is published in the *Federal Register*, not in the *Code of Federal Regulations*. *Am. Mining Congress*, 995 F.2d at 1112.

The third criteria is clearly not met because the publication of the RoC is the by-product of a congressional mandate, rather than the exercise of legislative authority. The Secretary publishes the RoC to inform the public of known and possible carcinogens.[4] In publishing the RoC, NTP does not invoke legislative authority, rather it follows a congressional directive. As a result, the listing decision does not satisfy the third criteria for establishing that agency action is a substantive rule.

Finally, since no court has ever determined that the listing of a chemical on the RoC constitutes a substantive rule, the defendants' conduct cannot be considered an

---

[3] In this case, the decision to list sulfuric acid mist could not have had the legal effect identified in *Tozzi* because OSHA regulated sulfuric acid mist in 1992, which was prior to its classification on the RoC. Def. Reply Br. at 15 n.12. OSHA's decision was based on the IARC's conclusion that sulfuric acid mist was carcinogenic to humans. *Id.*

[4] The D.C. Circuit has stated that:

> [T]he proper focus in determining whether an agency's act is legislative is the source of the agency's action, not the implications of that action: If the rule is based on specific statutory provisions,... it is an interpretive rule. If, however, the rule is based on an agency's power to exercise its judgment as to how best to implement a general statutory mandate, the rule is likely a legislative one.

*Fertilizer Institute v. EPA*, 935 F.2d 1303, 1308 (D.C. Cir. 1991).

*amendment* to a prior substantive rule. Accordingly, the NTP's decision also fails to satisfy the fourth criteria in the *AMC* Test.

Thus, because none of the four criteria set forth in the *AMC* Test are met, this Court must find that NTP's decision to list sulfuric acid mist on the RoC is an interpretive rule. As a result, neither HHS nor its delegees are required to satisfy the APA's formal notice-and-comment procedures.

**B.     NTP Satisfied the Listing Requirements Set Forth in Section 301**

Next, the plaintiff contends that NTP failed to satisfy the listing requirements set forth in Section 301, and the decision should therefore be vacated. While a decision to list a substance on the RoC as a known carcinogen is reviewable by this Court, *see Tozzi*, 271 F.3d at 310-11, it should not second guess the scientific decisions of an agency. *Am. Mining Congress v. EPA*, 907 F.2d 1179, 1187 (D.C. Cir. 1990). Rather, it should "'review the record to ascertain that the agency has made a reasoned decision based on reasonable extrapolations from some reliable evidence.'" *Id.* (quoting *Natural Resources Defense Council v. EPA*, 902 F.2d 962, 968 (D.C. Cir. 1990)) (internal quotation marks omitted). Based upon a review of the record, the Court finds that NTP satisfied the necessary requirements to list sulfuric acid mist as a known carcinogen.

As to the first listing requirement, NTP's finding of "sufficient evidence of carcinogenicity from studies in humans that indicate a causal relationship between exposure to [sulfuric acid mist] and human cancer" was based on the findings in seven

studies that link exposure to sulfuric acid mist and cancer. R. at 709. Moreover, NTP stated that "[n]o adequate experimental animal carcinogenicity studies of sulfuric acid or [sulfuric acid mist] have been reported in the literature." *Id.* Plaintiff's disagreement with NTP's conclusion and criticisms of its sources is insufficient to render unreasonable the decision to list sulfuric acid mist as a known carcinogen. The Court finds that NTP's decision to list sulfuric acid mist is reasonably based on reliable evidence.

As to the second listing requirement, NTP determined that a significant number of persons are exposed to sulfuric acid mist. It did so based, in part, on a case-by-case analysis. Def. Stmt. of Facts ¶ 6. Plaintiff attempts to discredit NTP's determination by focusing on its statement in the 9th RoC that "775,584 people are *potentially* exposed to sulfuric acid." Pl. Stmt. of Facts ¶ 35. Notwithstanding this language used by NTP in the 9th RoC, there is sufficient evidence in the record of actual exposure by a significant number of people. Sulfuric acid mist is one of the most extensively studied acid mists. R. at 710. Although sulfuric acid is an oily liquid at room temperature, the record indicates that the use of this substance during the manufacturing process affects the release of sulfuric acid mist. Def. Stmt. of Facts ¶ 23. And, as the defendants point out in their brief, "the record is replete with evidence of significant, actual exposure to sulfuric acid mist in the United States, including the exposure of thousands of fertilizer industry workers...." Def. Opening Br. at 14. In fact, occupational exposure to sulfuric acid mist has been documented in many industries, including, among others, acid treatment of

metals, manufacture of phosphate fertilizer, and manufacture of lead batteries. R. at 43-44. The plaintiff, whose members account for 71 percent of the sulfuric acid production in the U.S., even admits that "TFI members occasionally do generate extremely low levels of sulfuric acid mist emissions during fertilizer production operations." Pl. Stmt. of Facts ¶ 10. The "extremely low levels" of exposure do not discount the fact that there is actual exposure in the industry that is the principal user of sulfuric acid in the manufacturing process. The Court is satisfied that the record demonstrates, and reasonably supports, the agency's conclusion that a significant number of persons in the U.S. are *actually* exposed to sulfuric acid mist.

## ORDER

Accordingly, for the reasons set forth above, it is this 27th day of December, 2004 hereby

**ORDERED** that the plaintiff's Motion for Summary Judgment [# 12] is **DENIED**, and it is further

**ORDERED** that the defendants' Motion for Summary Judgment [# 19] is **GRANTED**.

**SO ORDERED.**

_____
RICHARD J. LEON
United States District Judge